IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHU SHUKLA,<br>             **Plaintiffs,**<br><br>      **v.**<br><br>UNIVERSITY OF PENNSYLVANIA<br>HEALTH SYSTEMS, PENN MEDICINE<br>UNIVERSITY CITY, CAPITAL HEALTH<br>REGIONAL MEDICAL CENTER, WEST<br>WINDSOR POLICE DEPARTMENT AND<br>JOANNA ROHDE ,<br>             **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  20-5634** |

## MEMORANDUM OPINION

Ashu Shukla ("Plaintiff") alleges that Defendants deprived him of his constitutional rights, violated federal and New Jersey law, and committed medical malpractice and related torts.  Pursuant to Federal Rule 12(b)(1), Capital Health Regional Medical Center ("CHS")[1] moves to dismiss the claims against it for lack of subject matter jurisdiction.

### I.      FACTUAL BACKGROUND

The gravamen of Plaintiff's Amended Complaint is that Defendant Joanna Rohde—a Human Resources manager of his former employer, Deloitte Consulting, LLC—is an undercover federal agent who triggered the other named Defendants to initiate harassing and abusive medical processes against him, including a week-long involuntary mental health commitment at CHS.  As relevant to this motion, CHS is a private, non-profit regional health system providing medical care in New Jersey which is incorporated and exclusively operates in New Jersey. Plaintiff is a resident of Mercer County, New Jersey.

---

[1] While named as Capital Health Regional Medical Center in the Amended Complaint and case caption, CHS clarifies in its Motion to Dismiss that it is properly referred to as Capital Health System, Inc.

Plaintiff describes how an officer from the West Windsor Police Department and two mental health professionals from CHS came to his home to initiate a mental health screening. This was shortly after Plaintiff had shared his suspicions about Rohde with the West Windsor Police Department and healthcare providers at the University of Pennsylvania Health Systems and Penn Medicine University City.  Namely, he believed Rohde was a federal agent employed by the Department of Justice and the Federal Bureau of Investigation, and she was surveilling him and tampering with his food in retaliation for his filing an employment discrimination lawsuit.[2]  Plaintiff was brought to CHS's Regional Medical Center from where he was transferred to an in-patient psychiatric unit at CHS where he remained for observation and treatment for a few days.

Plaintiff claims that his mental health screening and commitment were orchestrated by Rohde, who was tracking his location and surveilling his devices.  According to the Amended Complaint, Rohde coordinated with the other Defendants—including CHS—to harass him and to create an adversarial medical record that would undermine his employment lawsuit.[3]  Plaintiff brings claims against CHS for: medical malpractice; failure to supervise the CHS medical providers who treated him; failure to obtain his informed consent; constitutional equal protection and due process violations; fraud, delay, or ineffective assistance; negligence; deprivation of civil rights pursuant to 42 U.S.C. § 1983; conspiracy to interfere with civil rights pursuant to 42

---

[2] Plaintiff filed an employment discrimination lawsuit against Deloitte and Rohde in the Southern District of New York, alleging discrimination, harassment and retaliation based on his race, nationality, disability, and gender.  He thereafter started experiencing rashes and an upset stomach, which he attributes to Rohde.  Providers at University of Pennsylvania diagnosed Plaintiff with a common fungal rash, noted the possibility that Plaintiff was suffering from a delusional disorder, and recommended he undergo a psychiatric consultation and screening for schizophrenia.

[3] Plaintiff further alleges that agents from Deloitte used his involuntary commitment as an opportunity to break into his home, use his laptop computer, and tamper with his belongings.

U.S.C. § 1985; and tampering and retaliation against witnesses and informant.

CHS moves to dismiss all claims against it for lack of subject matter jurisdiction.  In response, Plaintiff argues in a series of letters that there is federal jurisdiction over this case pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Federal Tort Claims Act (FTCA), and under federal common law.[4]

## II.    LEGAL STANDARD

In that Article III of the United States Constitution, U.S. Const. Art. III, limits federal courts to hearing enumerated cases and controversies, "the court shall dismiss the action" as soon as it becomes apparent "by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter. . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (internal quotation marks and citation omitted).  "[B]ecause it involves a court's power to a hear a case," a challenge to the court's subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).  A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1) therefore "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh,* 546 U.S. at 506.  The party asserting subject matter jurisdiction has the burden of proving its existence.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).[5]

---

[4] In his letters, Plaintiff requested an extension of time to file a more complete response to the Motion to Dismiss.  Because Plaintiff's position on jurisdiction is clear from his letters no such detailed response is required and this request shall be denied.

[5] Subject matter jurisdiction challenges under Rule 12(b)(1) "may be facial or factual." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).  When a party makes a facial challenge to subject matter jurisdiction, as is the case here, the determination is "only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014).  In so doing, the same standard of review in considering a motion to dismiss under Rule 12(b)(6) is applied. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 258 (3d Cir. 2014).

In his Amended Complaint, Plaintiff concedes that he and CHS are both citizens of New Jersey. Moreover, Plaintiff does not contend that his damages exceed $75,000.  There is therefore no diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Nevertheless, Plaintiff contends there is federal question jurisdiction over his claims arising under federal law and supplemental jurisdiction over his state law claims.  Pursuant to 28 U.S.C. § 1331, federal courts have federal question jurisdiction where a plaintiff "pleads a colorable claim 'arising under' the Constitution or laws of the United States."  *Arbaugh*, 546 U.S. at 513 (citing *Bell v. Hood*, 327 U.S. 678, 681-85 (1946)).  A claim arises under federal law where a federal question appears on the face of the complaint.  *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 153-54 (1908); *see also Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.*, 657 F.2d 29, 33 (3d Cir. 1981).  Thus, there is federal question jurisdiction "only [over] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 28-29 (1983).

If there is jurisdiction over a federal law question, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The test for whether claims form part of the same case or controversy is whether the "state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction."  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  Jurisdiction may be declined where "the [state law] claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).

### III.    DISCUSSION

### A.  Constitutional and Federal Statutory Claims[6]

A claim arises under federal law where the plaintiff brings a claim pursuant to the United

States Constitution or a federal statute.  *See Am. Well Works Co. v. Layne & Bowler Co.*, 241

U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.").  In his

Amended Complaint, Plaintiff alleges that CHS violated his right to due process and equal

protection under the Fifth Amendment and brings claims pursuant to 42 U.S.C. § 1983 and 42

U.S.C § 1985.[7]

"[D]iscrimination, though invidious in all contexts, violates the Constitution only when it

may be attributed to state action."  *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 619

(1991); *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (explaining that acting "under the color

of law" for the purposes of a Section 1983 claim is interpreted identically to the state action

requirement under the Fourteenth Amendment).  There is therefore a firmly established state

action requirement for constitutional civil rights claims.  A private entity will only be deemed a

state actor for purposes of a constitutional claim in the rare circumstances where the private

---

[6] Plaintiff cites to the Federal Tort Claims Act in his Amended Complaint and letters in reply to CHS's Motion to Dismiss, without elaboration.  The Federal Tort Claims Act is a limited waiver of sovereign immunity that allows a plaintiff to sue the United States for torts committed by federal employees acting within the scope of their employment.  28 U.S.C. § 2671 *et seq.*  Because Plaintiff failed to name the United States as a defendant, any FTCA claim is not tenable.  *See, e.g.,* 28 U.S.C. § 2679(a); *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee.  Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." (citation omitted)).

[7] Plaintiff's January 20, 2021 letter also references the Fourteenth Amendment right to due process and equal protection.  The Fourteenth Amendment protects a person's constitutional right against the states, whereas the Fifth Amendment protects a person's constitutional rights against the federal government.  Construing Plaintiff's Amended Complaint liberally, it appears Plaintiff intended to invoke both the Fifth and Fourteenth Amendments since he alleges that Rohde is a federal agent and also brings claims against the West Windsor Police Department.  Neither constitutional provision confers subject matter jurisdiction over CHS because, as addressed below, Plaintiff does not plausibly allege that CHS is a federal or state actor.

entity's conduct "may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646; *see also Edmonson*, 500 U.S. at 620 ("Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints.").

Plaintiff alleges CHS violated his due process rights and New Jersey state law through his involuntary commitment and brings various tort-based medical malpractice claims alleging inadequate treatment while in CHS's care. These allegations, taken as true, are insufficient to allege state action on the part of CHS. CHS is a private health care system, not owned or operated by the state or federal government. Under analogous factual circumstances, the Third Circuit found in *Benn* that a private, not-for-profit psychiatric hospital in Pennsylvania was not a state actor for the purposes of Section 1983 when it initiated a short-term, involuntary commitment. *Benn v. Univ. Health Sys., Inc.,* 371 F.3d 165, 173 (3d Cir. 2004). Much like the Amended Complaint alleges, concerns were raised about Benn's mental health, and police therefore arrived at his home and transported him to a private psychiatric hospital for evaluation. *Id.* at 168-69. Just as here, Benn alleged that his involuntary commitment violated his constitutional rights and state law on civil commitments. As the Third Circuit explained, the private facility was not a state actor when it initiated an involuntary hold pursuant to state law. *Id.* at 171-72. Acting pursuant to a state mental health statute, even if the commitment allegedly violated the statute, did not constitute state coercion or willful participation in a joint activity with the state. *Id.*; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State").[8] Nor was

---

[8] Unlike in *Benn*, Plaintiff alleges that Rohde—acting as an agent of the DOJ and FBI—coordinated the other Defendants to initiate his mental health screening. A non-state actor may be liable pursuant to

there any basis to conclude that mental health treatment, including civil commitment, is

traditionally "the exclusive prerogative of the state." *Id.* at 172.  So too here, CHS is not a state

actor by dint of invoking, and allegedly violating, state law when holding Plaintiff for psychiatric

screening and observation at its private hospital system.[9]

As for Plaintiff's claim under 42 U.S.C. § 1985, while this statute provides a civil cause

of action for a conspiracy by private actors to violate constitutional rights, the conspiracy must

be motivated by animus towards a protected characteristic.  *See Griffin v. Breckenridge*, 403 U.S.

88, 102 (1971) ("[T]here must be some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action.").  Plaintiff alleges that the conspiracy

against him was a plot to undermine his employment lawsuit by creating damaging medical

records regarding his mental health or competence.  Setting aside the plausibility of such

---

Section 1983 where "the private party has acted with the help of or in concert with state officials."
*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994);
*see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[A] State normally can be held responsible for a
private decision only when it has exercised coercive power or has provided such significant
encouragement, either overt or covert, that the choice must in law be deemed to be that of the State").

Nevertheless, Plaintiff's claim that CHS cooperated with Rohde as a *federal* agent is not cognizable under
Section 1983, which provides an individual the right to sue state actors and those acting "under color of
state law."  Even if Plaintiff's Fifth Amendment Due Process claims are construed as arising under *Bivens
v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), which provides an implied private action for
damages against federal officers alleged to have violated a citizen's constitutional rights, such actions do
not extend to private entities such as CHS.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001)
(holding that *Bivens* does not extend to a claim against a private corporation operating a halfway house
under contract with the Bureau of Prisons).

[9] In his response letter, Plaintiff cites to *Adickes* to contend that a private entity can he held liable under
Section 1983 for a "custom or usage under the law."  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970).
However, the only argument Plaintiff makes based on *Adickes* is that his former employer, Deloitte, can
be held liable as a state actor for racial discrimination.  He offers no argument that CHS is anything but a
private entity acting in a non-state capacity.  Nor is *Adickes*, where the Supreme Court decided that a
privately-owned restaurant was a state actor when it was compelled by state law to discriminate based on
race, applicable here, where CHS was acting pursuant to non-discriminatory state laws related to mental
health commitments.  *Id.* at 171 ("[A] State is responsible for the discriminatory act of a private party
when the State, by its law, has compelled the act.").

allegations, Section 1985 does not reach a personal vendetta against the Plaintiff without an alleged discriminatory animus. *See Griffin*, 403 U.S. at 101 ("That [Section 1985] was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others."). While his underlying employment lawsuit regards racial discrimination, the allegations in his Amended Complaint do not allege that the Defendants conspired against him because of his race, national origin, or other protected status. Plaintiff therefore cannot rely on 42 U.S.C. § 1985 as a jurisdictional hook.

### B. Federal Common Law

Plaintiff's theory that federal common law confers jurisdiction is not viable either. After *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) pronounced that "[t]here is no federal general common law," only where "a case . . . implicate[s] uniquely federal interests" can jurisdiction be premised on the notion of federal common law. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988).

Rather than explain why each of Plaintiff's case citations is inapposite, suffice it to say that Plaintiff's claims against CHS do not implicate any of the uniquely federal interests therein addressed. Far from it. The claims at issue here are against a private hospital operating exclusively in New Jersey and are predominantly for violations of New Jersey state law and common law torts related to medical malpractice. Because state regulatory authorities and licensing boards govern the conduct of CHS and its medical staff, and specific state rules and statutes apply to medical malpractice claims, this case implicates state interests rather than uniquely federal interests. Nor does Plaintiff allege that CHS was under a contract with the federal government, or touch upon any of the limited areas of law where federal common law provides a basis for jurisdiction.

### C. Supplemental Jurisdiction

Plaintiff's remaining claims against CHS relate to its alleged non-compliance with New Jersey state law regarding involuntary commitments and the allegedly inadequate medical care he received while in CHS custody.  Such claims do not "form part of the same case or controversy", indeed are not even tangentially related to claims against the other Defendants here which focus on an alleged conspiracy to sabotage his employment discrimination lawsuit, psychologically torment him, and control him through cyber espionage and biochemical manipulation.  There is therefore nothing to be gained in terms of "judicial economy, convenience, and fairness to the litigants" from trying Plaintiff's state law claims against CHS alongside the claims he makes against the other Defendants.  *Kach*, 589 F.3d at 650 (internal quotation marks and citation omitted).

For the reasons stated above, the claims against Capital Health Systems, Inc. will be dismissed for lack of jurisdiction.[10]

An appropriate order follows.


**January 26, 2021**                                                 **BY THE COURT:**


                                                                                 **/s/Wendy Beetlestone, J.**

                                                                                 _____
                                                                                 **WENDY BEETLESTONE, J.**

---

[10] Plaintiff's claims under New Jersey state law and state common law will be dismissed without prejudice so that Plaintiff may file in the proper state forum, should he so choose.